IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

RACHEL ROBINSON                                                                    PLAINTIFF

V.                                                  CIVIL ACTION NO. 3:07CV002-B-A

MICHAEL J. ASTRUE,
Commissioner of Social Security                                       DEFENDANT

## MEMORANDUM OPINION

This case involves an application pursuant to 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Rachel Robinson for disability benefits under Title II and Supplemental Security Income (SSI) benefits under Title XVI of the Social Security Act. The district court's jurisdiction over plaintiff's claim rests upon 28 U.S.C. § 1331. In accordance with the provisions of 28 U.S.C. § 636(c), both parties consented to have a United States Magistrate Judge conduct all proceedings in this case, including an order for entry of a final judgment. Therefore, the undersigned has authority to issue this opinion and the accompanying final judgment.

## STATEMENT OF THE CASE

Plaintiff Rachel Robinson filed her applications for disability insurance benefits and SSI on July 23, 2003, alleging that she became disabled on July 12, 2002, due to dizziness, headaches and back pain; these ailments were revised during the administrative process and were, at the time of the hearing and decision, defined as depression, degenerative arthritis and dizziness. Her claim was denied initially and on reconsideration, and plaintiff requested a hearing before an

administrative law judge. The plaintiff's hearing on this matter was held before Administrative Law Judge (ALJ) Larry Stroud on July 14, 2005. The plaintiff was forty-four years of age – and is thus considered a younger individual – when the ALJ rendered his decision.

In his decision dated February 22, 2006, the ALJ found plaintiff's alleged impairments were severe but that she was capable of performing her past relevant work. Consequently, the ALJ held that the plaintiff was not disabled within the meaning of the Social Security Act. The plaintiff's request for a review of this decision was denied by the Appeals Council on November 8, 2006; thus, the ALJ's decision became the final decision of the Commissioner and was appealed to this court.

Plaintiff's brief contends that the ALJ committed reversible error because (1) substantial evidence does not support the decision and (2) the ALJ incorrectly assessed the plaintiff's mental capabilities.

**DISCUSSION**

    A.    <u>Standard of Review</u>

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence in the record as whole and whether the Commissioner used the correct legal standard. *Legget v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "To be substantial, evidence must be relevant and sufficient for a reasonable mind to accept it as adequate to support a conclusion; it must be more than a scintilla but it need not be a preponderance . . . ." *Anderson v. Sullivan,* 887 F.2d 630, 633 (5th Cir. 1989) (citation omitted). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994) (citing *Richardson v. Perales,* 402 U.S. 389, 390 (1971), *overruled on*

*other grounds by Sims v. Apfel*, 530 U.S. 103, 108 (2000)). However, a decision is not substantially justified if the facts are not fully and fairly developed. *Boyd v. Apfel*, 239 F.3d 698, 708 (5th Cir. 2001) (citing *Newton v. Apfel*, 208 F.3d 448, 458 (5th Cir 2000)). Conflicts in the evidence are for the Commissioner to decide, and if substantial evidence is found to support the decision, the decision must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court may not re-weigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner, *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), even if it finds that the evidence leans against the Commissioner's decision. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). If the Commissioner's decision is supported by the evidence, then it is conclusive and must be upheld. *Paul v. Shalala*, 29 F.3d 208, 210 (5th Cir. 1994).

      B.     <u>Five-Step Sequential Evaluation Process</u>

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520, § 416.920(a)(4). The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels, the burden then shifts to the Commissioner at step five. *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). First, plaintiff must prove she is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1527, § 416.920(a)(4)(i). Second, the plaintiff must prove her impairment or combination of impairments is "severe" in that it has more than a minimal effect on the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1527, § 416.920(a)(4)(ii); *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985). At step three, the ALJ must

conclude the plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P. 20 C.F.R. § 404.1520(d), § 416.920(a)(4)(iii). Fourth, the plaintiff bears the burden of proving she is incapable of meeting the physical and mental demands of her past relevant work. 20 C.F.R. § 404.1520(e), § 416.920(a)(4)(iv). If the plaintiff is successful at all four of the preceding steps, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work. 20 C.F.R § 404.1520(f), § 416.920(a)(4)(v). If the Commissioner proves other work exists which the plaintiff can perform, the plaintiff must then prove that she cannot, in fact, perform that work. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002).

    C.    <u>Listing 12.05</u>

Because plaintiff's first ground for reversal involves a latter step in the sequential evaluation process, the court will first address the plaintiff's second ground: whether the ALJ erred in evaluating plaintiff's mental capabilities. Psychologist Dr. Whelan performed a consultative evaluation on the plaintiff and stated in his written evaluation that, "[i]f tested with the WAIS-III, I think she [plaintiff] would score in below the borderline range." R. at 170. However, the record contains no IQ test scores. The only other documentation within the record as to her intellectual performance is a report card documenting her grades throughout school. R. at 108.

In his decision, the ALJ parenthetically noted that he had considered Listing 12.05 of Appendix 1 to Subpart P of Part 404 of Title 20 of the Code of Federal Regulations "since it was once argued," but that subaverage general intellectual functioning must be established prior to

age twenty-two, and the record did not support an onset date for plaintiff prior to this age. R. at 18. The notation goes on to say, "[i]ndeed, the claimant was in regular classes and has worked successfully in a semi-skilled job." *Id.*

This issue hinges on Listing 12.05, which provides:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
> OR
> B. A valid verbal, performance, or full scale IQ of 59 or less;
> OR
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;[1]
> OR
> D. A valid verbal, performance, or full scale IQ of 60 through 70, resulting in at least two fo the following:
> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or

---

[1]The Fifth Circuit has not defined what constitutes a significant work-related limitation of function; however, the Commissioner stated that the SSA "always have intended the phrase to mean that the other impairment is a 'severe' impairment as defined in §§ 404.1520(c) and 416.90(c)." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed Reg. 50746, 50772, 2000 WL 1173632 (August 21, 2000). Because the ALJ deemed plaintiff's impairments severe, an IQ test score ranging between 60 and 70 would have resulted in the plaintiff being declared disabled under the Act.

> 3. Marked difficulties in maintaining concentration, persistence, or pace; or
> 4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.05.

The ALJ's analysis specifies that he dismissed the plaintiff's argument that she fit within Listing 12.05 because she had not established an onset of mental retardation before the age of twenty-two. Clearly the ALJ strictly interpreted the *id est* cited in the definition. However, in comment to the 2000 revisions of Listing 12.05, the drafters – speaking for the Commissioner – stated,

> [w]e expanded the phrase setting out the age limit for the "developmental period." The final rules clarify that we do not necessarily require evidence from the developmental period to establish that the impairment began before the end of the developmental period. The final rules permit us to use judgment, based on current evidence, to infer when the impairment began. This is not a change in interpretation from the prior rules.

Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-01, 50754, 2000 WL 1173632 (August 21, 2000). Numerous circuits utilize the SSA's intended interpretation and satisfy the early manifestation requirement by holding that a person's IQ is deemed constant throughout his life so long as there is no evidence to the contrary, such as, for example, that the claimant has suffered brain injury. *See, e.g.*, *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001); *Luckey v. Department of Health & Human Servs.*, 890 F.2d 666, 668-69 (4th Cir. 1989); *Guzman v. Bowen*, 801 F.2d 273, 275 (7th Cir. 1986); *Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001).

The Fifth Circuit has neither formally adopted nor refused to apply this rebuttable presumption, and the undersigned will apply it in this analysis given that (1) the presumption

6

employs sound logic in that IQs, absent extraordinary circumstances, remain invariant and (2) the 2000 comment to the provision at issue clarifies that the onset date can be inferred and, thus, need not be proved by the claimant. The ALJ's denial of the plaintiff's claim of mental retardation simply due to her lack of evidence concerning the onset date is error; however, the court must probe further to determine whether substantial evidence supports his finding that she did not meet the listing.

An ALJ must fully and fairly develop the facts relative to a disability claim. *Ripley v. Chater,* 67 F.3d 552, 557 (5th Cir. 1995); *Carey v. Apfel*, 230 F.3d 131, 71 (5th Cir. 2000); *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). In simplest of terms, a decision is not supported by substantial evidence if the ALJ failed to fully the develop the record. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). The ALJ should develop additional, necessary evidence before the hearing whenever a pre-hearing review of the record demonstrates that the evidence is not sufficient for a full and fair inquiry into each matter at issue. 4 SOC. SEC. LAW & PRAC. § 52:23. A consultative evaluation or additional testing becomes necessary only when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment. *Brock v. Chater*, 84 F.3d 726, (5th Cir. 1996).

However, reversal is appropriate only when the claimant demonstrates that she was prejudiced. *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984). In order to establish prejudice, the claimant must establish that, had the ALJ fully developed the record pursuant to his duty, that the ALJ "could and would have adduced evidence that might have altered the result." *Id.* In *Kane*, the Fifth Circuit remanded despite the plaintiff's failure to proffer evidence because "the statements by her counsel at oral argument concerning what she would have

testified had the ALJ made proper inquiry are at least plausible." *Id.* Eleven years later, the court paraphrased this holding and stated, "prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision."[2] *Ripley v. Chater*, 67 F.3d 552, 557 fn 22 (5th Cir. 1995).

In this instance, the record did not contain a sufficient amount of evidence necessary for the ALJ to fully develop this issue. Dr. Whelan's IQ estimate, which the ALJ ultimately disregarded, constituted sufficient evidence within the record to raise a suspicion of mental retardation given the fact that Dr. Whelan was the consulting psychologist, and his opinion put plaintiff's intelligence directly at issue, a finding which is further bolstered by the fact that plaintiff herself argued that she was mentally impaired within her pre-hearing brief. The facts that plaintiff attended regular classes and that she worked successfully in a semi-skilled job form, without more, do not constitute an adequate basis for denying plaintiff's claim that she fits within Listing 12.05. The ALJ should have required the plaintiff to undergo an IQ examination prior to the hearing. Thus, not only did the ALJ err in basing his finding that she did not meet Listing 12.05 on her lack of evidence regarding the onset date, he also erred in not developing the record

---

[2]The plaintiff in *Ripley* contended that the ALJ should have requested a medical source statement describing the type of work of which he remained capable, and the court held that "in a situation such as the present one, our inquiry focuses upon whether the decision of the ALJ is supported by substantial evidence." *Id.* at 557. Thus, it seems from *Ripley* that the first prong of the prejudice standard enunciated in *Kane* requires that the ALJ would have received the evidence (*i.e.*, that the evidence existed or was obtainable) if he had fully developed the record and that, in cases where a claimant alleges that the ALJ erred for not requiring an examination, the plaintiff is under no duty to independently seek an examination and reveal its outcome to the appellate court.

by having the plaintiff's intelligence tested, which renders his decision in regard to whether plaintiff met the listing erroneous, as it is based upon insufficient evidence.

In determining whether the plaintiff has demonstrated prejudice which justifies reversal and remand of this claim, the court need not determine whether the plaintiff has demonstrated good cause for her failure to offer this evidence at the prior proceeding; instead, the burden fell upon the ALJ upon being directed to this issue by the plaintiff's pre-hearing brief and Dr. Whelan's statement. The court need only find, which it does, that the SSA was capable of acquiring an IQ test score and that such a test score may have affected the outcome of the ALJ's decision.[3] The undersigned thus orders that this action be remanded to the Commissioner so that the plaintiff's IQ can be tested and her case be reevaluated.[4]

## CONCLUSION

For the foregoing reasons, the Commissioner's final decision is reversed and remanded. A separate order of judgment reversing the Commissioner's final decision shall issue contemporaneously with this opinion.

Respectfully submitted, this, the 29th day of June, 2007.

/s/ S. ALLAN ALEXANDER
UNITED STATES MAGISTRATE JUDGE

---

[3] *See* n. 1 *supra*.

[4] In light of this conclusion, the court need not address the plaintiff's fist assignment of error.